57 CCPA

**Application of Walter L. BORKOWSKI and John J. Van Venrooy.**

**Patent Appeal No. 8214.**

United States Court of Customs and Patent Appeals.
March 12, 1970.

---

5. See In re Borkowski (PA 8214) Cust. & Pat.App., 422 F.2d 904 decided concurrently herewith.

Barry A. Bisson, Wilmington, Del., attorney of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 7–12 of application serial No. 144,221, filed October

10, 1961, entitled "Preparation of Oxygenated Hydrocarbons." No claim is allowed.

The claimed invention is a process for producing oxygenated hydrocarbons such as alcohols, glycols, aldehydes, and acids by reacting hydrocarbons with ferric chloride in vapor phase and hydrolyzing the resulting chlorohydrocarbon. The reaction of ferric chloride with hydrocarbons is commonly referred to in the art as "ferrichlorination."

The following drawing from appellants' specification is a schematic illustration of the process:

[A1306]

When read with reference to this drawing, claim 7 sufficiently describes the process for the purposes of this opinion:[1]

7. Method of preparing oxygenated hydrocarbon which comprises:

(a) feeding hydrocarbon in vapor phase at an intermediate level into a reactor maintained at a temperature in the range of 315–500°C., said hydrocarbon being a vapor at the selected reaction temperature and said reactor containing beneath the level of hydrocarbon introduction a bed of iron compounds comprising a ferrous chloride mass in its upper part and a ferric oxide mass in its lower part,

(b) feeding gaseous ferric chloride into said reactor and reacting it with the hydrocarbon above said bed, whereby chlorination of hydrocarbon occurs with the formation of by-product hydrogen chloride and the ferric chloride is reduced to solid ferrous chloride which falls downwardly to said bed,

(c) removing a mixture of chlorohydrocarbon and hydrogen chloride from the upper part of said reactor,

(d) recovering hydrogen chloride from the mixture,

(e) introducing the hydrogen chloride into the bed at a level near the top of the ferric oxide mass,

(f) passing oxygen into the ferric oxide mass beneath the level of introduction of the hydrogen chloride,

(g) flowing said oxygen upwardly through the bed and in contact with the ferrous chloride, whereby the ferrous chloride is continuously converted in part to gaseous ferric chloride and in part to ferric oxide,

(h) removing ferric oxide from the bottom of said reactor,

(i) contacting said chlorohydrocarbon with water at a temperature in the range of 100–200°C. and in the presence of the removed ferric oxide, whereby the chlorohydrocarbon is hydrolyzed to oxygenated hydrocarbon and the ferric oxide is converted to hydrated ferric chloride,

(j) dehydrating the ferric chloride,

(k) and recycling the dehydrated ferric chloride to said reactor in amount substantially equivalent to the ferric oxide removed therefrom.

Claim 8 depends from claim 7 and recites a preferred temperature range of 350–425°C. for step (a); claims 9 and 10 depend, respectively, from claims 8 and 7 and recite a preferred temperature range of 120–160°C. for step (i); and claims 11 and 12 each depend from claim 7 and require, respectively, that the "hydrocarbon" be "methane" and "ethane."

The examiner rejected claims 7–12 "as based on an insufficient disclosure under 35 U.S.C. 112" and claims 7–10 as failing to "particularly point out and distinctly claim the invention as required by 35 U.S.C. 112." There is no art rejection.

With respect to the first rejection, the examiner was of the opinion that appellants' description of their invention "is not such that it would enable one skilled in the art to practice the present invention, particularly with reference to the chlorination step." He mentioned "relative amounts of the 'hydrocarbon'" and "magnitude of reaction times" as two parameters which appellants should have disclosed more fully and, while acknowledging that a specification need not "read as instructions to a technician" and that "[p]erhaps one might after a few hours of experimentation, determine how to carry out and

---

1. It will help, in following the claim, to know that:

ferric chloride is "Fe₂Cl₆" shown in reactor 10 and in lines 15 and 27;
ferric oxide is "Fe₂O₃" shown in the reactor at 12 and in line 18;
solid ferrous chloride is "FeCl₂" shown in the reactor at 11;

oxygen is "O₂" introduced into the reactor at 13;
hydrogen chloride is "HCl"; and the end product of the process is the "Oxygenated Hydrocarbon" at center right of the drawing.

control the chlorination of the simplest hydrocarbon, methane," the examiner stated:

> But, the whole purpose of Section 112 is to obviate the necessity for such experimentation. Moreover, the conditions are obviously not the same for methane as they are for the myriad of other hydrocarbons contemplated and urged to be suitable for use in the instant process.

Sustaining this rejection, the board stated, inter alia:

> The Examiner has pointed to the possible variations in the time of chlorination, probably because this is a demonstratably [sic] variable and important parameter. The disclosure, though, is no more deficient in this respect than with respect to any other of its values which would help to illustrate the "mode of operation" in which appellants believe their invention to lie. Appellants do not believe that the time of chlorination is a critical aspect of their process and, probably, if you consider this as a single parameter they are correct in this, but the asserted novelty in the mode of operation which invites a careful balance of a number of distinct reactions makes illustration particularly necessary. Desirably and necessarily, such illustration should provide an exemplary correlation of the times of reaction, rates of reactant, feed and material removal (chlorinated product, ferric oxide, HCl, etc.). This would inform a man skilled in the art of the actual feasibility of appellants' process, and provide some sort of jumping off place in a plunge into the unknown when planning a series of experiments from which the necessary operating parameters of the process may be determined.

The "exemplary correlation" which the board considered necessary would appear to be nothing more nor less than a spe-

cific working example. However, as we have stated in a number of opinions,[2] a specification need not contain a working example if the invention is otherwise disclosed in such a manner that one skilled in the art will be able to practice it without an undue amount of experimentation. Here, while it may be that an "exemplary correlation" of parameters such as times of reaction and rates of reactant feed and product removal would give the worker in the art some useful information and provide a "jumping off place," we see no basis for concluding that without such information the worker in the art would not be enabled by the specification to practice the invention, i. e., to "balance" the several reactions involved in appellants' process. The "few hours" experimentation mentioned by the examiner certainly would not seem to be an undue amount of time considering the nature of the claimed invention. We therefore cannot agree with the reasons given by the examiner and the board for concluding that appellants' specification does not comply with § 112. The rejection of claims 7–12 "as being based on an insufficient disclosure" is accordingly reversed.

As above stated, the examiner additionally rejected claims 7–10 "for failing to particularly point out and distinctly claim the invention as required by 35 U.S.C. 112." This language is that of the second paragraph of § 112, first sentence. The examiner was of the opinion that claims 7–10 "are unduly broad and indefinite in the recitation of the 'hydrocarbon' reactant," his reasons being as follows:

> This term ["hydrocarbon"] encompasses an almost limitless number of compounds, and, hence, is *not adequately supported by the somewhat limited disclosure.* The salient *absence of a representative example* for the various types of hydrocarbons alleged to be suitable for use in the instant

---

2. E. g., In re Long, 368 F.2d 892, 54 CCPA 835 (1966), and cases cited therein. Compare Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 270, 271, 37 S.Ct. 82, 61 L.Ed. 286 (1916).

process further render[s] the *support for the breadth of the claims on appeal inadequate.* [Emphasis added.]

We have two difficulties with these reasons. First, since the rejection of the claims is predicated only on criticisms of the disclosure portion of the specification, we do not see how they are relevant to that portion of the second paragraph of § 112 from which the examiner was quoting, namely, the first sentence, which pertains only to claims and reads in full:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter *which applicant regards as his invention.* [Emphasis added.]

And, second, regardless of the relevance of these criticisms to the requirements of the second paragraph of § 112, we do not find the criticisms to have merit.

▪ With respect to our first difficulty, the examiner's apparent paraphrase of the first sentence of the second paragraph of § 112 is incomplete in a most important respect. While the examiner states the requirement to be claims which "particularly point out and distinctly claim *the invention*" (emphasis added), § 112 actually requires claims "particularly pointing out and distinctly claiming *the subject matter which applicant regards as his invention*" (emphasis added). In reality, this means that applicant must particularly point out and distinctly claim the *subject matter sought to be patented.*

▪ The examiner's approach to determining whether appellants' claims satisfy the requirements of § 112 appears to have been to study appellants' disclosure, to formulate a conclusion as to what he (the examiner) regards as the broadest invention supported by the disclosure, and then to determine whether appellants' claims are broader than the examiner's conception of what "the invention" is. We cannot agree that § 112 permits

of such an approach to claims. The first sentence of the second paragraph of § 112 is essentially a requirement for *precision and definiteness* of claim language. If the scope of subject matter embraced by a claim is clear, and if the applicant has not otherwise indicated that he intends that claim to be of a different scope,[3] then the claim does particularly point out and distinctly claim the subject matter which the applicant regards as his invention. That is to say, if the "enabling" disclosure of a specification is not commensurate in scope with the subject matter encompassed by a claim, that fact does not render the claim imprecise or indefinite or otherwise not in compliance with the *second* paragraph of § 112; rather, the claim is based on an *insufficient disclosure*[4] (§ 112, first paragraph) and should be rejected on that ground. See In re Fuetterer, 319 F.2d 259, 50 CCPA 1453 (1963); In re Kamal, 398 F.2d 867, 55 CCPA 1409 (1968); and In re Wakefield (PA 8192), Cust. & Pat. App., 422 F.2d 897, decided concurrently herewith. Thus, just as a claim which is of such breadth that it reads on subject matter disclosed in the prior art is rejected under § 102 rather than under the second paragraph of § 112, a claim which is of such breadth that it reads on subject matter as to which the specification is not "enabling" should be rejected under the first paragraph of § 112 rather than the second. We do not intend hereby to suggest that rejections under § 112 must be labeled "first paragraph" or "second paragraph." What we do suggest is that it should be made clear exactly which of the several requirements of § 112 are thought not to have been met. Is the claim unclear or is the specification's disclosure inadequate to support it?

▪ As to the merits of the conclusions and reasons upon which the examiner based this rejection, we do not agree either that claims 7–10 are rendered "un-

---

3. See In re Prater, 415 F.2d 1393, 56 CCPA 1381 (1969), where the applicant did indicate an intended scope different from our interpretation.

4. A disclosure may, of course, be insufficient to support one claim but sufficient to support another.

duly broad" or "indefinite" by the term "hydrocarbon" or that a "representative example for the various types of hydrocarbons" is needed. As appellants point out, claims 7–10 are limited to hydrocarbons which are in the vapor phase at the reaction temperature and thus do not call for just any hydrocarbon. Moreover, there is no magical relation between the number of representative examples and the breadth of the claims; the number and variety of examples are irrelevant if the disclosure is "enabling" and sets forth the "best mode contemplated."

The board did not expressly accept or reject the examiner's reasons for separately rejecting claims 7–10 under § 112, second paragraph. Instead, the board "affirmed" this rejection while observing *for the first time* that although appellants' specification suggests that the hydrocarbon used in their process must be one which, upon being ferrichlorinated, will yield a *chlorinated product maintainable in vapor phase* at the reaction temperature, claims 7–10 contain no corresponding limitation.[5] On this point the board said:

> The requirement that the product be a vapor is obviously an important one because we find *no description* in the specification of *how* the liquid and solid products and by-products are to be removed from the chlorination vessel. [Emphasis added.]

Although this statement relates only to alleged deficiencies of the *specification* and although, as pointed out above, such deficiencies give rise to rejections under the first and not the second paragraph of § 112, appellants have not complained that they were misled by this confusion nor do they dispute that claim 7 (and claims 8–10 by dependence) should contain the additional limitation. Neither have appellants sought to have the board denominate the raising of this issue a new ground of rejection under Rule 196

(b). Accordingly, we are constrained to affirm the decision of the board as to claims 7–10.

However, we note that in a Request for Reconsideration addressed to the board, appellants asked, inter alia, that

> * * * a new decision be made, in accordance with Rule 196(c), which includes an explicit statement that Claims 7–10 may be allowed if they are amended by the applicants to include the limitation that the chlorinated products be maintained in vapor phase at the reaction temperature.

Rule 196(c) provides:

> (c) Should the decision of the Board of Appeals include an explicit statement that a claim *may be allowed in amended form*, applicant shall have the right to amend in conformity with such statement which shall be binding on the primary examiner in the absence of new references or grounds of rejection. [Emphasis added.]

The board refused appellants' request, saying only:

> We find no acceptable basis for the requested recommendation as to claims 7 to 10.

Apparently, the board declined to act pursuant to Rule 196(c) because the rejection of all the claims under the first paragraph of § 112, which it affirmed, still would have prevented the claims from being "allowed in amended form." Inasmuch as (1) we have reversed this other rejection, (2) the necessity of amending claims 7–10 to include the additional limitation was first asserted by the board, and (3) appellants have had no opportunity to so amend their claims (as they clearly are willing to do), we *suggest* that the board consider whether, under these circumstances, a recommendation under Rule 196(c) is now in order.

5. In this regard, the specification states:
   The above-described portion of the process is applicable to the ferrichlorination of any hydrocarbon stock which is a vapor at the selected reaction temperature within the range of 315–500°C. *and whose chlorination products can be maintained in vapor phase at such temperature level.* [Emphasis added.]

The decision of the board is reversed as to claims 11 and 12 and affirmed as to claims 7–10.

Modified.