57 CCPA

**Application of Frank E. HALLECK.**
**Patent Appeal No. 8289.**

United States Court of Customs and Patent Appeals.

March 12, 1970.

Ronald E. Lund, Minneapolis, Minn., attorney of record, for appellant. C. Willard Hayes, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 3, 11–13, 17–19, 27–30 and 34 in appellant's application entitled "Method and Composition for Regulating Animal Growth." [1] No claims have been allowed.

The invention, we are told, is based upon the discovery that relatively small amounts of peristalsis-[2] inhibiting drugs, when properly administered with the water or feed of animals or as a separate material, either orally or parenterally,

---

1. Serial No. 301,997 filed August 14, 1963 and alleged to be a continuation-in-part of serial No. 149,857 filed November 3, 1961.

2. Webster's Third New International Dictionary (1961) defines peristalsis as follows:

* * * successive waves of involuntary contraction passing along the walls of the intestines or other hollow muscle structure and forcing the contents onward.

are effective for increasing the growth rate or increasing the feed efficiency of the animals and, in many cases, for improving both of these.

Preferred peristalsis-inhibiting substances are those which are highly specific for the smooth gastrointestinal muscles and which do not materially affect digestive enzymes or possess other deleterious side effects. Specifically disclosed are parasympatholytic agents, also referred to as anticholinergic agents, such as atropine, methantheline bromide, propantheline bromide, piperidolate hydrochloride, pipenzolate methyl bromide, as well as derivatives of some of these.

The invention is said to be applicable to all types of animals and poultry. Illustrative are claims 1 and 19:

1. An improved growth stimulating composition for animals which comprises an animal feed and an effective amount of a peristalsis-regulating substance contained therein for growth stimulation.

19. A method of stimulating animal growth which comprises administering to said animal an effective amount of peristalsis-regulating substance for growth stimulation.

Claim 34 is drawn to a feeding composition as is claim 1 and recites the growth-regulating substance as being "peristalsis inhibiting." Claim 3 is similar and recites additionally that the substance is "specific as to smooth gastro-intestinal muscles." Claims 11–13, 17 and 18 depend from claim 1 and recite the specific substances hereinbefore set out. Claims 27 and 28–30 depend from claim 19 and also set forth the specific agents used. The references are:

Schmidt, et al. (Schmidt), "Atropine Depression of Food and Water Intake," American Journal of Physiology, Vol. 192, pp. 543–45, 1958.

Archdeacon, et al. (Archdeacon), "Effects of Atropine on Dogs," American Journal of Physiology, Vol. 157, pp. 149–152, 1949.

Merck Index, 17th ed., pp. 111, 664, 821, 823 and 859, Merck and Co., Inc., Rahway, N.J., 1960.

Goodman, et al. (Goodman), Pharmacological Basis of Therapeutics, 2nd ed., pp. 558, 559, 562 and 563, MacMillan Co., New York, N. Y., 1955.

Journal of American Medical Association, pp. 781–2, July 2, 1949.

Schmidt reports the results of a study on the effect of atropine upon food and water intake in rats that indicated that such intake is depressed by atropine.

Archdeacon reports the findings of a study of the effects of several doses of atropine sulfate on food ingestion and water drinking in dogs, indicating that the atropine exerted a real food ingestion inhibitory effect as well as weight loss.

Merck discloses the specific parasympatholytic agents set out in the appealed claims and indicates that they are generally useful for relaxing the smooth muscles of the gastrointestinal tract. Atropine and atropine sulfate are described as having veterinary utility in relaxing the smooth muscles of certain animals.

Goodman discloses the pharmaceutical properties of atropine and methantheline bromide, stating specifically that atropine sulfate may be serviceable to control excess motor activity such as hyperperistalsis and that atropine has been employed in the treatment of obesity— "it probably reduces appetite by decreasing gastrointestinal activity * * *." Also disclosed is that methantheline bromide "delays gastric emptying, prolongs the intestinal transit time" in laboratory animals and reduces gastric secretion in fed and fasted dogs.

Journal of American Medical Association contains a report on drugs for obesity and states:

Hurrying the passage of partially digested food through the intestinal tract by means of cathartics at most interferes a little with caloric intake at the level of the intestine instead of at the table.

The examiner rejected the appealed claims under 35 U.S.C. § 112, second paragraph, as "too broad and * * * functional at the exact point of alleged novelty." The examiner felt that the claims were too broad because the disclosure made clear that to obtain a desired result each specific agent must be employed at specific and different proportions depending on the type of animal. The claim language "an effective amount" was considered to be functional and inadequately defined because of an insufficient number of examples to enable determination of proportions of a given agent. The claims were also considered broad enough to encompass the treatment of growing or mature animals.

The claims were further rejected under 35 U.S.C. § 103 as unpatentable over Merck. It was the examiner's opinion that since the reference disclosed use of the parasympatholytic agents for relaxing smooth muscles, and one is useful in both human and animals, administration of the same with or in feed would be an obvious routine procedure. Since the proportions are similar to those of appellant's examples, the examiner felt that Merck would inherently obtain the same results of growth promotion or improved feed efficiency.

The appealed claims were also rejected under 35 U.S.C. § 103 as unpatentable over Goodman in view of the Journal article and Merck. Alleging that Goodman teaches that one of the claimed active agents orally administered to animals prolongs intestinal transit time and that the Journal article suggests increased caloric intake when intestinal time is increased, the examiner considered it obvious to increase intestinal time in order to improve utilization of the feed and growth. Merck, it was contended, rendered obvious the use of different agents.

A rejection of the claims as unpatentable over Schmidt and Archdeacon was withdrawn in the Examiner's Answer after appellant's discussion of those references in his brief before the board; however, appellant relies on those references for teachings allegedly in support of his position.

The board affirmed the above rejections for essentially the same reasons as advanced by the examiner, adding with respect to the 35 U.S.C. § 112 rejection that the specification failed to disclose any particulars concerning administration by injection, a mode included within the method claims. The board additionally felt that the specification, while also contemplating inhibiting animal growth and decreasing feed conversion efficiency, failed to distinguish between substances which would stimulate and those which would inhibit growth.

■ We are unable to agree with the Patent Office's position with respect to the injection under 35 U.S.C. § 103. Appellant's invention is not merely a composition comprising an animal feed and a peristalsis-regulating substance nor a method of administering a peristalsis-regulating substance to animals. Rather, what is alleged to be novel and unobvious is the discovery that a peristalsis-regulating substance will stimulate animal growth. No prior art suggests this. Merck merely identifies the compounds disclosed by appellant and states that they are parasympatholytic agents for relaxation of the gastrointestinal tract. The only veterinary uses disclosed are for atropine and atropine sulfate as respiratory stimulants and smooth muscle relaxants, with no specific mention of effect on peristalsis. Nor is it clear that therapeutic administration of the materials according to the teaching of Merck would inherently result in a feed composition containing an amount of substance effective for growth stimulation or that the animal would be administered such an amount. Moreover, the purpose of growth stimulation is not obvious from Merck.

The references Goodman and Journal also fail to render obvious the claimed invention. Goodman suggests that methantheline bromide delays gastric emptying and prolongs the intestinal transit time. The Journal article states that hurrying the passage of food through the intes-

tinal tract at most interferes a little with caloric intake at the level of the intestine. We are unable to deduce from these teachings that which the Patent Office would have us believe, namely, that delayed gastric emptying and prolonged intestinal transit time necessarily and obviously would result in growth stimulation. With regard to intestinal transit time, the Journal article states that decreasing it *"at most* interferes a *little"* (emphasis added). Moreover, Goodman also discloses that atropine has been employed in the treatment of obesity, hardly a suggestion of growth stimulation. Likewise, Schmidt and Archdeacon suggest that atropine inhibits food ingestion. The prior art of record, considered as a whole, is silent as to stimulating animal growth by administration of pristalsis-regulating substances. The rejections under 35 U.S.C. § 103 are, therefore, reversed.

The claims were also rejected by the examiner as "too broad and * * * functional at the exact point of alleged novelty"[3] because the claims failed to set out specifics regarding proportions of substances to be used. We have set out above our view that the "exact point" of novelty lies in the discovery that the agents in question stimulate growth in animals, not in the amount used other than that it be an amount effective to stimulate growth. The functional term "an effective amount * * * for growth stimulation" is not objectionable where the *amount* as such is not critical and its use has been approved in many cases. See In re Caldwell, 319 F.2d 254, 50 CCPA 1464 (1963). Those skilled in the art will be able to determine from the written disclosure and its examples what an effective amount for

growth stimulation is. Granted that the proportions may vary for a specific agent and specific animal at a particular stage of growth, it does not appear from the facts of record that determination of such amounts would be beyond the skill of the art nor that it would involve undue experimentation to ascertain them. On the other hand, for appellant to ascertain and recite the numerical limits for each parasympatholytic agent known would very likely require under research. We have also considered the board's concern with the lack of particulars regarding the disclosed administration by injection and the failure of the written disclosure to elaborate on the statement that in some cases inhibition of growth has been observed, but we do not share its view for the above reasons pointing out that the specification is directed to those skilled in the art.

The decison of the board is, accordingly, reversed.

Reversed.

3. The examiner gave as statutory basis 35 U.S.C. § 112, second paragraph; however, his factual analysis as well as the board's indicates that they considered the fault to be one of "undue breath." In In re Borkowski, Cust. & Pat.App., 422 F.2d 904 (No. 8214) and In re Wakefield, Cust. & Pat.App., 422 F.2d 897 (No. 8192), decided concurrently herewith, this court has again pointed out that such rejections

are more properly considered under the first paragraph of 35 U.S.C. § 112; however, we do not consider the examiner's error in stating the basis to be fatal to his position since appellant was fully apprised by his factual analysis that the alleged problem was one of lack of correlation between the claims and written disclosure.