57 CCPA

**Application of Calvin M. HAMMACK.**

**Patent Appeal No. 8278.**

United States Court of Customs and Patent Appeals.

July 2, 1970.

See also Cust. & Pat.App., 427 F.2d 1384.

Victor R. Beckman, San Francisco, Cal., attorney of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the rejection of claims 43, 46, 51, 58, 59, 61, 63, 67–69, 76 and 81 of appellant's patent application [1] as indefinite and thus failing to comply with 35 U.S.C. § 112. Seven claims stand allowed.

The subject matter of the application on appeal relates to the determination of the position and velocity of moving bodies such as aircraft, space vehicles, ballistic missiles, and submarines. The well-known doppler effect, which broadly stated is the phenomenon whereby relative movement between a source of emanations or reflections of a wave train (such as sound waves or electromagnetic waves) and a receiver of the wave train results in an effective change in wave frequency, is used as the basis of measurements for making the determination. Appellant's basic measurements are of doppler effect responses indicative of

1. Serial No. 86,770, filed February 2, 1961, for "Polystation Doppler System For Tracking Vehicles, Measuring Displacement and Rate Thereof and Similar Applications."

either radial velocity or change in radial range. Various systems are disclosed, each requiring a plurality of such measurements in different combinations and different time relationships. Some systems use a wave transmitter in the moving body with a receiver or receivers elsewhere, and others use transmitters and receivers at known positions, as on the ground, and make the measurements by means of waves reflected from the moving bodies. The latter are disclosed as using a plurality of transmitter and cooperating receiver combinations, with the transmitter and receiver of each combination either at the same location or at different locations. It is contemplated that measured electrical values representative of the radial velocities and changes in radial ranges for the different stations and different times may be fed to computer apparatus to calculate the position or velocity of the target. Certain of the systems are disclosed with some specificity while other systems are described through general statements of modifications that may be made. A wide variation of systems is contemplated.

Although the appealed claims differ so widely that none can be designated as truly representaive, claims 43, 58, 59 and 67 are set out as examples:

43. A method of determining the otherwise unknown and unbounded position of each of a number of well separated points in space comprising the steps of determining differences between geometric parameters of configurations associated with said points of unknown position, each of said configurations including only a single one of said points of unknown position and a plurality of points whose positions are known, each of said differences being determined between two selected configurations each configuration of said two selected configuration[s] comprising the same number of known points as comprised by the other of said two selected configurations, and determining in orthogonal coordinates the position of each of said points of otherwise unknown and unbounded position using the said determined differences and the coordinates of the points of unknown position.

58. A method of locating a moving object whose position is unknown and unbounded other than as described in the steps of this claim comprising the following steps:

Step. 1. Establishing the space a plurality of reference points separate from each other and separate from the moving object;

Step 2. Transmitting wave signals from one of said reference points, which wave signals impinge upon said moving object.

Step 3. modifying the spectrum at one of said reference points, of said wave signals at said moving object in accordance with the motion of said moving object;

Step 4. changing the direction of propagation of said wave signals at said moving object;

Step 5. detecting the modified wave signals and the modification thereof;

Step 6. determining from said detected signals the values of a quantity which is linearly related to the variation of the sum of the distance from the transmitting reference point to the moving object and the distance from moving object to the receiving reference point;

Step 7. Performing a plurality of said determinations using substantially simultaneously a number of said reference points such that the otherwise unknown and unbounded position of the moving object is completely determined and specified by the said values and the known parameters associated with said reference points and said determinations such that any useful degree of redundancy is provided.

59. An electronic system for detecting a moving reflecting object and locating the position thereof, which position is neither known nor in any way bounded

and whose characteristics of motion are similarly unknown and unbounded, said system being capable of performing the above functions on a single unknown moving reflecting object in the presence of a plurality of such moving objects, comprising the following:

(1) Wave transmitting means for illuminating said moving reflecting objects;

(2) Remote from said transmitting means, receiving means for detecting the signals reflected from said moving reflecting objects;

(3) Frequency reference means at said transmitting means and at said receiving means, particularly accurate with respect to each other, for providing a common frequency base between the various transmitting and receiving means, permitting accurate determination of variations of time delay associated with the propagation paths between said transmitting means and said receiving means by way of said moving reflecting object.

(4) At said receiving means directional apertures for providing some discrimination between waves from separate spaced moving reflecting objects and for improving the signal to noise ratio of the signal to be detected by said receiving means;

(5) At said receiving means tracking filter means for improving discrimination between waves from separate moving reflecting objects whose courses and positions are such that there is a difference in the character of the reflected waves owing to the differences of such positions and motions, and for improving the signal to noise ratio of the detected signal;

(6) means connected to said receiving means for measuring discrete, substantial, and finite increments of the unknown lengths of the propagation paths of waves transmitted by said transmitting means and detecter by said receiving means;

(7) a plurality of combinations each comprising elements (1), (2), (3), (4), (5) and (6);

(8) computing means connected to said plurality of measuring means, said computing means programmed to solve a set of simultaneous equations, said set comprising as unknown quantities the orthogonal coordinates of said moving object at the initiation and the termination of each increment measurement and comprising as known quantities the values of wave path length increments measured by said measuring means.

67. A method of determining the position of any of a plurality of separate points in space, here called A points, whose positions are unknown and unbounded other than as described in the steps of this claim comprising the following steps:

Step 1. Determining the values or linear combinations thereof, of differences in the distances between each point of pairs of said unknown A points and each of a plurality of other points in space, here called B points, said differences being between pairs of distances, each of which last-named distances terminates on a different one of said A points, the number of said determined values, the number of A points, and the number of B points being such that the otherwise unknown and unbounded positions of said A points are completely determined and specified by said determined values and any known parameters relative to said B points, with any degree of useful redundancy desired;

Step. 2. Determining the positions of said any of A point whose position it is desired to determine and the positions of as many of such points as it is desired to determine in an orthogonal coordinate system employing said determined differences and said known parameters.

The examiner rejected all of the appealed claims as indefinite, relying particularly on the requirement in the second paragraph of 35 U.S.C. § 112 that

the specification shall conclude with one or more claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." He commented that one skilled in the art "should not have to make a searching analysis of the entire description and drawing in order to guess at the structure covered by these claims" and that "the claims must have some distinct meaning on their face." Although recognizing that "latitude in the manner of expression, aptness of terms, and choice of language should be permitted," the examiner held that the claims "do not define the invention with a reasonable degree of particularity." Additionally, he referred to each claim individually in setting forth examples of language which he considered inadequate under the statute.

In affirming the rejection, the board observed that:

* * * appellant is asserting in effect that in the absence of prior art he is entitled to choose the challenged language of the claims, providing he can demonstrate how that language can be applied to his own disclosure, no matter how devious that application may be.

In disagreeing with that position of appellant the board stated: [2]

It is the claims which must perform this function of pointing out, not a voluminous dissertation, presented by way of argument that cannot be included in the patent. A claim, as here, which merely serves as a shadowy framework upon which are located words so lacking in precise referents in the specification that elaborate explanations extraneous to both the specification and the claims are re-

quired to present their meaning, cannot satisfy this section of the statute.

Appellant states that the only question here is whether the appealed claims comply with "35 USC 112, paragraph two." We have observed, however, in considering the examiner's discussion of the claim language, that he seems to question whether certain claims, or certain recitations therein, are supported by the disclosure. We have said recently that this is more precisely a matter which involves a question of compliance with the first paragraph of 35 U.S.C. § 112. See In re Borkowski, 422 F.2d 904, 57 CCPA (1970); In re Wakefield, 422 F.2d 897, 57 CCPA (1970). Nevertheless, it is clear that the examiner and board considered all the claims to be indefinite and that they expressly relied only on the second paragraph of section 112 as grounds for the rejection. We therefore will consider only the question of compliance with the second paragraph, as urged by appellant.

As to the merits of the rejection in question, appellant initially emphasizes that none of the claims is rejected on prior art. He urges that:

so long as the claims distinguish over the prior art, as in the present case, there is no need to confine the claim language to specific recitation of steps clearly spelled out in the patent specification.

Appellant also argues that the specific recitations pointed out by the examiner as examples of indefiniteness are not actually indefinite.

In our opinion, the board correctly characterized the appealed claims as serving as "a shadowy framework" upon which are located words "lacking in precise referents in the specification" and requiring "elaborate explanations ex-

2. The board additionally commented that claim 43 was "so confusingly drawn as not to distinguish between the disclosed doppler system and a pair of human observers using bioptic vision as 'reference points' to estimate the position of any moving object." Appellant has attempted to characterize this as a new ground of re- jection but we are inclined to accept the board's statement on reconsideration that it did not make a new ground of rejection but merely pointed out further examples of indefiniteness. We therefore find it unnecessary to discuss this comment but rely on the other reasons for indefinite- ness given by the examiner and board.

traneous to both the specification and the claims." While we cannot completely ascribe to the broad position of the examiner that the claims must "have some distinct meaning on their face," we are satisfied that he was correct in saying that appellant's claims "do not define the invention [i. e., 'the subject matter which the applicant regards as his invention'] with a reasonable degree of particularity."

Appellant's position that the claims need be no more specific than is necessary to distinguish over the prior art is in effect an attempt to read out of the statute the requirement in the second paragraph of section 112 for claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." However, that paragraph obviously defines a requirement additional to that of distinguishing from the prior art under 35 U.S.C. §§ 102 and 103 and the essence of that requirement is that the language of the claims must make it clear what subject matter they encompass.

All provisions of the statute must be complied with in order to obtain a patent. The requirement stated in the second paragraph of section 112 existed long before the present statute came into force. Its purpose is to provide those who would endeavor, in future enterprise, to approach the area circumscribed by the claims of a patent, with the adequate notice demanded by due process of law, so that they may more readily and accurately determine the boundaries of protection involved and evaluate the possibility of infringement and dominance. Compare United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232 (1942), Kaiser Industries Corp. v. McLouth Steel Corp., 400 F.2d 36 (6th Cir. 1968).

Referring to the present claims, we note particularly that the various steps as recited in the process claims, and the elements of sole apparatus claim 59, are not set out with sufficient particularity or adequately related to one another to define a process or apparatus for determining position or the like attributed to the subject matter in the preamble. We think it is apparent that claims which are deficient in this respect do not meet the requirement of making clear the subject matter from which they would preclude others.

One example of language which the examiner specifically found indefinite is the recitation in claim 43 of "determining differences between geometric parameters of configurations associated with said points of unknown position." We fully agree that that expression is indefinite as applied to appellant's disclosure since the scope or meaning of "geometric parameters of configurations" is not in itself definite nor is it shown to become so upon consideration of the specification. What is equally important, the expression does not state how the "configurations" are "associated" with the "points" nor make it clear how the determinations so recited are operatively related to each other or to the other steps of the claim so as to define a method which performs the function of determining the "position of each of a number of well separated points in space," as attributed to the method in the preamble. Consideration of claim 43 in light of the disclosure but without reading into it unrecited limitations from the specification, leaves it far from clear what the above quoted expression means or what the claim encompasses. The indefinite nature of this claim is further indicated by the fact that appellant states that it does not read on his "first modification of the invention," which makes instantaneous measurements responsive to doppler frequency indicative of *rate of change in range* of an object, but encompasses another process wherein measurements responsive to doppler frequency over a finite period of time are made to obtain indications of *change in range,* without it being clear from the specification, or even the arguments, where the distinction arises in the language used.

As another example of the indefinite nature of the appealed claims, reference is made to step 3 of claim 58 reading:

> modifying the spectrum at one of said reference points, of said signals at said moving object in accordance with the motion of the moving object.[3]

Appellant states that this refers to wave signals "incident upon the moving object" being changed in character in a manner dependent on the motion of the object, "*i. e.*, their spectrum is changed, their frequency is changed." It thus appears that what is designated a step of "modifying the spectrum" is really some phenomenon, not clear from the claim, that inherently results from the motion of the object to be located rather than a discrete process step performed by the operator or the apparatus engaged in locating the object. The nature of the "modifying" contemplated by the claim is not clear and, moreover, the reference to it as "at one of said reference points" is inaccurate. Thorough study of the claim, with due consideration to the disclosure of the application and the arguments of appellant, leaves us unsatisfied that the area encompassed thereby would be clear to a person skilled in the art.

Concerning claim 59, which we take as another example, the examiner stated:

> Merely collecting together a plurality of systems such as recited in elements 1–6 of the claim will not result in any kind of a system to be found within the four corners of the application. The claim requires that there be as many transmitters as receivers. Fig. 5 shows no such system. One skilled in the art confronted by this claim would have a burdensome job of trying to understand how the claim relates to the disclosure. * * *

Limiting our consideration to the matter of indefiniteness, we do not find the various elements in each combination of elements, or the "plurality of combinations" of such elements, to be so recited and so operatively related as to define a device which operates to perform the function for locating the position of a single moving object from among a plurality of such objects as recited in the preamble. Moreover, the mere reference in the preamble to "[a]n electronic system" for performing a complex function, does not name a known apparatus in such manner that the undefined characteristics and relationships of the recited elements would appear to be made known or understood by those skilled in the art. Where there exists the additional problem, pointed out by the examiner, of understanding from the application disclosure how the claim relates thereto, we are not convinced that it is made clear what subject matter the claim encompasses.

As a final example of indefiniteness, we consider claim 67 which is drawn to a method of determining the position of "any of a plurality of separate *points* in space." [Emphasis added]. The claim makes no reference to any moving object although the specification does not appear to teach locating "points" other than as they represent actual positions assumed by such an object. While the question of adequacy of support might also have been raised, we think it beyond doubt that the claim fails to make it definite what subject matter appellant intends to be covered thereby.

Since we find no reversible error in the rejection of all the appealed claims as failing to comply with the requirements of the second paragraph of 35 U.S.C. § 112, the decision of the board is affirmed.

Affirmed.

---

3. Although appellant does not charge that claim 58 is inaccurately reproduced in the record, he quotes step 3 in his brief as omitting the term "at one of said reference points." Even if the step does so read, it would not change our conclusion here.