**Application of Robert F. CONLEY et al.**
**Patent Appeal No. 9101.**

United States Court of Customs
and Patent Appeals.
Jan. 24, 1974.

Eugene F. Buell, Pittsburgh, Pa. (Buell, Blenko & Ziesenheim), Pittsburgh, Pa. attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Robert D. Edmonds, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–9 of application serial No. 721,955, filed April 17, 1968, entitled "Satin White-Clay Compositions and Methods of Manufacture," for "indefiniteness" under 35 U.S.C. § 112, second paragraph. We reverse.

### The Invention

The invention relates to paper coatings and results from the discovery by appellants of a seemingly simple solution to a well-known problem in the art of paper coatings. As appellants explain the prior art, it has long been known to provide paper coating compositions made up of dispersions of kaolinite, adhesives, and other mineral materials such as satin white. Satin white is a calcium sul-fo-aluminate (clay) of somewhat indefinite composition manufactured from $Ca(OH)_2$ and $Al_2(SO_4)_3$. As appellants' specification explains:

> The chief problem in the manufacture of satin white is stability—it must be kept in water suspension, usually at about 20–25% solids. It is well recognized that drying satin white destroys it together with the useful optical properties it imparts. It is observed that the suspension is even degraded at temperatures above 75°C. While 75–80% water may be higher than necessary for its stability, the extremely thixotropic viscosity of satin white in water makes it completely impractical to handle at solids higher than 25%. The high water content introduces several commercial problems. Shipping costs are exorbitant and shipping is prohibited where exposure to cold weather results. The latter problem arises because freezing of the water in satin white also destroys the pigmentary characteristics. The "extra" water in satin white may dilute the coating composition and require additional drying time and costs for its removal.

In the prior art, the aqueous solution of satin white is mixed at the site of paper coating with kaolinite and adhesives, such as starch, and roll or blade coated onto a moving paper sheet and dried thereon to provide coated paper. Appellants have discovered, however, that the stability problem of the satin white suspension can be avoided by premixing the satin white and kaolinite and drying the mixture to provide a handleable, powdery material whose properties when reconstituted at the site of paper coating, according to their application, are, unlike satin white alone, "not only not degenerated, but actually improved over the freshly formulated components."

The claimed invention is a dry particulate coating pigment composition of kaolinite and satin white which may subsequently be made up into aqueous coating compositions and which compris-

es a co-dried mixture of an effective amount each of satin white and kaolinite and a method of making such a mixture. The method consists of forming a satin white composition in aqueous suspension, adding kaolinite in sufficient amount to retain the effectiveness of satin white as a paper coating pigment on rewetting after drying, and removing the water therefrom to form a free-flowing powder.

Representative claims, with the portions alleged to be indefinite emphasized, are:

1. The method of producing an improved dry particulate coating pigment containing satin white and kaolin which after drying may subsequently be made up into aqueous coating compositions comprising the steps of:

(a) forming *a satin white composition in aqueous suspension*;

(b) adding a kaolinite to said aqueous suspension of satin white in sufficient amount to retain the effectiveness of satin white as a paper coating pigment on rewetting after drying; and

(c) removing water from the aqueous suspension to form a free flowing powder.

3. The method as claimed in claim 1 wherein a paper coating adhesive *starch is added to said admixture* prior to drying.

8. A dry particulate composition suitable for subsequent formulation in paper coating colors comprising a co-dried *mixture of satin white and kaolinite* of about 5% moisture content.

Claims 2–7 are all dependent from claim 1 and claim 9 is dependent from claim 8.

*The Rejection*

As stated in the Examiner's Answer, the claims were rejected under 35 U.S.C. § 112, second paragraph, for the reasons that:

A. Claims 1–10 are indefinite since operative proportions of (1) satin white in the aqueous suspension (Claims 1–7) and (2) satin white and kaolinite in the "compositions" (claims 8–10) are not recited.[1]

B. Claim 3 is indefinite since operative proportions of starch in the "admixture" is [sic] not recited.

Sustaining rejection (A), the board stated only the following reasons, which appear to be directed to the language of claims 8 and 9:

It is evident that the amount of kaolinite is of some importance or criticality in the formation of the desired satin white compositions because as Example III shows, appellants' objective is not attained with either a satin white or kaolinite clay used separately. With respect to even the 30% satin white compositions no improvement in the effectiveness of the satin white as a paper coating pigment on rewetting after drying is achieved when the composition is *oven* dried. The specification does not describe, indeed, the relative amount of kaolinite that is required to produce the desired and indicated effectiveness when the product is oven dried. The proportions specified as a sufficient amount are uncertain, as the examiner states, because the "effectiveness" as a paper coating pigment is a variable consideration depending on the particular aspect of paper coating properties that may be emphasized. The uncertainty of the expression used is not made less by the fact that it is possible to obtain an

1. A somewhat similar rejection of at least some of the same claims for "indefiniteness" under the second paragraph of § 112 was withdrawn by the examiner in his Answer. The rationale for this rejection was that the claims were "indefinite since the expression 'in sufficient amount to retain the effective-

ness of white satin' * * * [and other language in at least some of the claims] are functional and do not, themselves, set out operative proportions."

In their brief in this court appellants have withdrawn the appeal on claim 10.

improvement in some paper coating characteristics while at the same time obtaining less desirable results in others—even in the coating characteristics listed in the specification.

As to rejection (B), the board stated that "With respect to claim 3 the proportion of starch is unspecified although it is evident that this proportion may grossly influence the characteristics of the resulting coating composition in itself. In proper proportion it may, of course, act as a binder as disclosed and improve the rheology." (Rheology refers to the flow characteristics of the composition.)

### Appellants' Arguments

Appellants answer the assertion that the language of claim 1, and of the claims dependent therefrom, is indefinite for failure to recite the operative proportions of satin white in the aqueous suspension with the statement that "there are no critical proportions of satin white in aqueous suspension." As appellants see it, "The only considerations so far as proportions are concerned are *first* to have enough water to create a suspension and *second* not to have so much water as to make it economically unfeasible to remove the water in the final drying step." Appellants further maintain that their "specification provides numerous examples of satisfactory practices and one skilled in the art would immediately recognize these reasonable limits."

As to the alleged indefiniteness of composition claims 8 and 9, appellants make a similar argument, noting that their specification gives many examples of the proper proportions of satin white and kaolinite and one skilled in the art would know what proportions to use. They emphasize that the invention lies in the discovery that one can add kaolinite to wet satin white and then dry the mixture and later reconstitute it to make a paper coating composition without losing the properties of the satin white. With respect to the board's reference to an oven dried sample, which

showed no improvement over satin white as a paper coating material, appellants state that their purpose was not to show an *improvement* over satin white as a paper coating pigment, but only "to provide a means for modifying satin white so that it can be successfully dried and shipped and be at least equal to satin white as a coating pigment," not necessarily superior.

### OPINION

#### Indefiniteness

We state at the outset exactly what is meant by the requirement of the first sentence of the second paragraph of § 112 which was the stated basis for the rejection, given the shorthand name "indefiniteness." It is essentially a requirement for *precision and definiteness* of claim language. If the scope of subject matter embraced by a claim is clear, and if the applicant has not otherwise indicated that he intends the claim to be of a different scope, then the claim does particularly point out and distinctly claim the subject matter which the applicant regards as his invention. In re Borkowski, 422 F.2d 904, 909, 57 CCPA 946, 952 (1970). Stated another way, the "requirement is that the language of the claims must make it clear what subject matter they encompass", In re Hammack, 427 F.2d 1378, 1382, 57 CCPA 1225, 1230 (1970), and thus make "clear the subject matter from which they would preclude others." In re Hammack, supra, 427 F.2d at 1382, 57 CCPA at 1231.

Application of the requirement of the second paragraph of § 112, so interpreted, to the specific words of the claims which the examiner and the board have held to be indefinite shows immediately the impropriety of the label "indefinite," in the sense of the requirement for precision and definiteness of claim language in order that one can determine whether or not he would infringe the claim. There is no question that if one forms "a satin white compo-

sition in aqueous suspension" he is within this language of claims 1–7. If "adhesive starch is added" to his admixture he infringes claim 3 to this extent, and if he has a "mixture of satin white and kaolinite" he is within this wording of claim 8. In this sense, therefore, there is nothing "indefinite" in the language used.

### "Claiming the Subject Matter Which Applicant Regards as His Invention"

Occasionally the first sentence of the second paragraph of § 112 has been relied upon as a basis for rejection of a claim, not because of "indefiniteness" of the claim language but because the language used did not particularly point out and distinctly claim the subject matter *which the applicant regards as his invention.* This portion of the statutory language has been relied upon in cases where some material submitted by applicant, *other than his specification,* shows that a claim does not correspond in scope with what *he regards* as his invention. In re Prater, 415 F.2d 1393, 56 CCPA 1381 (1969); In re Cormany, 476 F.2d 998, —— CCPA —— (1973). There has been no reliance here on anything other than appellants' specification to suggest this as a basis for the second paragraph rejection made.[2]

It is not inappropriate to observe under this heading that the board's reference to an "oven dried" product in the passage quoted above from its opinion is entirely beside the point. Appellants' specification makes it very clear that oven drying was not satisfactory as a way of dehydrating the satin white-kaolinite slurry. The only satisfactory method of dehydrating disclosed is spray drying. The disclosed samples that were oven dried were not formulated into pa-

per coating compositions and are no part of appellants' inventive contribution except in the sense of teaching the art how *not* to try to practice their invention—a useful kind of disclosure to make.

Accordingly there is no basis under the second paragraph of § 112 for the rejection made.

### Summary

The rejections of claims 1–9 under 35 U.S.C. § 112 are reversed. The appeal as to claim 10 is dismissed.

Reversed.

MILLER, Judge (concurring).

I concur with the decision that the rejection of the claims should be reversed, for the reasons stated under the heading entitled *"Indefiniteness."* At the same time, I call attention to the majority's statement: "Appellants' specification makes it very clear that oven drying was not satisfactory as a way of dehydrating the satin white-kaolinite slurry." To me, this implies that appellants are claiming *more* than they regard as *their* invention (some of the claims cover oven drying) and would indicate rejection under 35 U.S.C. § 112, second paragraph. Here the rejection being reversed was also under 35 U.S.C. § 112, second paragraph, but was premised on "indefiniteness."

Also, it appears that the reasons set forth by the board to justify its affirmance of the examiner's rejection are directed to 35 U.S.C. § 112, *first* paragraph. For example, the board states: "The specification does not describe, indeed, the relative amount of kaolinite that is required to produce the desired and indicated effectiveness when the product is oven dried."

---

2. This is not to say, however, that "indefiniteness" under the second paragraph of § 112 cannot be created or brought out by reference to the specification. As we said in In re Moore, 439 F.2d 1232, 1235, 58 CCPA 1042, 1047 (1971), the definiteness of claim language is not analyzed in a vacuum, "but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art." There has been no such reference to the specification here.