57 CCPA

### Application of Carl F. BENSON and John H. Cowles.

### Patent Appeal No. 8185.

United States Court of Customs and Patent Appeals.

Dec. 11, 1969.

Baldwin and Almond, JJ., dissented.

Mason, Porter, Diller & Brown, Washington, D. C., attorneys of record, for appellants. Vincent L. Remik, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, GANEY, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals which affirmed the rejection of claims 3 and 12 of appellants' patent application, serial No. 442,970, filed March 26, 1965, entitled "Overrunning Clutch Outer Member." Seven claims have been allowed.

### THE DISCLOSURE

Appellants' application discloses a sheet metal outer member, or shell, for an overrunning clutch. The clutch is positioned in a machine element to be rotated, such as a small gear or pulley. A shaft, which is the source of rotational power, extends into the clutch. The clutch transmits rotational movement from the shaft to the outer member of the clutch through a plurality of rollers which roll against cam surfaces when the shaft is rotated in one direction, thereby rotating the outer member of the clutch in the direction and at the speed of the shaft. The outer member securely engages the interior of the machine element to be rotated, the holding being accomplished in appellants' disclosure by frictional engagement. The

outer member disclosed by appellants may be more readily understood by reference to Fig. 3 in their application, which is here reproduced.

**FIG. 3**

[A463]

The sheet metal outer member 8 has a cylindrical exterior 11, making it suitable for insertion into a circular bore in the machine element to be rotated. The interior of the shell 8 has a plurality of adjacent surfaces 13 against which rollers may bear. Applicants state that if the member 8 is made of thin sheet metal, the bearing of the rollers on the circumferentially spaced axially extending cam surfaces will expand the member into tighter engagement with the bore wall, thereby holding the member and the machine element in fixed relationship. When the driving shaft slows or stops, the rollers roll out of jamming relationship with the cam surfaces so that the machine element and the shell 8 may continue to rotate until their energy is used up.

## THE CLAIMS

The appealed claims read:

3. An outer clutch member for an overrunning clutch comprising a thin sheet metal shell having a cylindrical external surface of circular configuration for frictional centering engagement within a machine element bore and an embossed internal surface defining a plurality of circumferentially spaced axially extending cam surfaces, said shell varying in thickness circumferentially.

12. An outer clutch member for an overrunning clutch comprising a thin wall metal shell formed of sheet metal drawn to have an outer surface in the shape of a cylinder for frictional centering engagement within a cylindrical machine element bore and an embossed internal surface defining a plurality of circumferentially spaced axially extending cam surfaces of uniformly changing radial dimension, said shell wall varying in thickness circumferentially.

## THE REFERENCES

The references with which we are concerned are Ferris[1] and Rice.[2] We view the other cited references as merely cumulative, since none of them shows a pertinent feature not present in either Ferris or Rice.

The Ferris patent teaches the use of sheet metal in forming the outer members of an overrunning clutch, as seen from Fig. 1 of that patent.

1. U. S. Patent 3,011,606 issued December 5, 1961.

2. U. S. Patent 348,691 issued September 7, 1886.

[A464]

The outer member 12 of Ferris includes a sheet metal cup section 13 generally cylindrical but bent to form circumferentially spaced cam surfaces. The covering cup 17 shrunk-fit over the member 12 in order to add "substantial stiffness to the outer race 12." It thus appears clear that expansion of the outer member into frictional engagement with a cylindrical bore wall would be impossible, due to the outer member's stiffness.

The Rice patent shows an overrunning clutch, the outer member being illustrated in Fig. 3 thereof.

[A465]

Rice teaches that the outer ring member V should be made of hardened steel and attached to a machine element by clamping, the clamping members being bolted in place. The outer member V of Rice has a cylindrical exterior surface, which was not true in Ferris. Since the attachment of the Rice outer member V to a machine element is by clamping, and since the outer member is of hardened steel, it is clear that no frictional engagement between the outer member V and the machine element is necessary or possible.

## THE BOARD

The Board of Appeals affirmed the Examiner's rejection of claim 3 as lacking novelty (35 U.S.C. § 102) over each of three references, Rice, supra, Mattson[3] and Hall.[4] We need not discuss the details of the disclosures of the latter two references. Suffice it to say that none of these three references shows sheet metal as the material for the outer member nor do they disclose appellants' frictional engagement feature.

The board then affirmed the rejection of claims 3 and 12, supra, under 35 U.S.C. § 103 based upon Ferris in view of Rice. The board said: "While the outer surface of the shell [of Ferris] is not cylindrical, in our opinion it would be obvious to make it so if used in the environment of Rice, since Rice discloses a similarly cylindrical outer surface."

## OPINION

As to the rejection for lack of novelty, we have noted above that the use of sheet metal material plus frictional engagement appears in none of the three cited references. Since these limitations are recited in each claim here, the rejection under § 102 is erroneous.

Regarding the obviousness rejection of each claim under § 103, we conclude that the board erred in affirming the examiner. Our conclusion is based upon two reasons. First, both Ferris and Rice

teach the use of a stiffened or hard material which could not satisfy the limitation in appellants' claims that the external surface be "for frictional centering engagement within a machine element bore." We consider this recitation a proper limitation on the material in an article claim although we do not view it as the sole point of novelty in the claim. Appellants appear to have discovered that frictional engagement would result if the sheet metal is sufficiently thin. The claims here define a thin outer member, and the prior art does not teach that thinness is at all a factor. The difficulty with the word thin is that it is generally indefinite. Here the words "for frictional centering engagement" are not only a limitation on the external surface, but plainly a limitation on the word thin. We do not construe the claims as requiring that the outer member actually be used for frictional centering engagement in a bore, but only that it be sufficiently thin to permit such use and that it not possess any characteristic which would prevent such use. Sometimes, as here, a material is as well defined by its intended use as by its dimensions or other physical characteristics, and in this case we know of no reason why the limitation in terms of use should not be placed in the claims and given meaning in their interpretation. The hard or stiffened shells disclosed by Rice and Ferris both lack the expansion characteristic necessary to accomplish the frictional engagement recited in the two claims on appeal here. Second, the clamping required by Rice indicates that the adaptation of Ferris to the environment of Rice would not produce the invention defined by the claims here. The cylindrical outer surface would be present, but frictional centering engagement would be absent.

We conclude that, taking the references together, a recited element in each of the claims in issue is not shown or suggested. Accordingly, we *reverse* the

3. U. S. Patent 3,174,598 issued March 23, 1965.

4. U. S. Patent 2,864,629 issued December 16, 1958.

decision of the board on each of these claims.

Reversed.

BALDWIN, Judge, dissenting, with whom ALMOND, Judge, joins.

Although I concur in the reversal of the rejection of the claims under 35 U.S.C. § 103, I must respectfully dissent from the remainder of the majority's disposition of this case.

Appellants' invention, *as disclosed*, comprises an outer member for an overrunning clutch having a cylindrical exterior surface (for insertion into a circular bore) and a cammed interior surface against which the rollers of the clutch will roll. The outer member is formed from sheet metal of a guage sufficiently thin so that when the clutch rollers are made to bear against the interior cam surfaces, the pressure they create will cause the metal to deform slightly in an outward direction, thus effecting an expansion of the outer member which creates a frictional engagement with the bore into which it is inserted.

To my mind the claims on appeal do not define the invention disclosed. In making the rejection under 35 U.S.C. § 102, the Patent Office evidently felt the same way, since the devices shown in the prior art references are clearly not anticipatory of the *disclosed* invention. The examiner and the board were simply interpreting the claim language as broadly as possible.

The majority evidently feels that the Patent Office went too far in interpreting the claim language. The majority rationalizes its decision by interpreting the claim language "for frictional centering engagement within a machine element bore" as a critical limitation not met by the references, contending:

> Sometimes, as here, a material is as well defined by its intended use as by its dimensions or other physical characteristics * * *.

Apparently, the quoted claim language is being interpreted as a physical limitation on the *material*, i. e., the sheet metal, making up the shell of the article claimed. The obvious intent is that this language, when coupled with the other limitation on the shell material, i. e., the word "thin", will adequately define the critical distinguishing feature of the disclosed invention, which is that the shell be made of sheet metal *sufficiently* thin so that the relatively slight internal pressure produced by the bearing of the rollers on the interior cam surface will cause the shell *to expand into* frictional engagement with the bore into which it is inserted.

Assuming that my understanding of the majority's intent is correct, then I feel that the majority has itself gone too far, not only in manipulating claim language to achieve a desired end (at the expense of logical syntax), but also in reading limitations disclosed in the specification into the claims.

I do not quarrel with the broad proposition that a statement of intended use may, in some instances, be such a "functional" statement as to be given consideration in interpreting claim language. In re Land, 54 CCPA 806, 368 F.2d 866 (1966). However, if my understanding of the majority's opinion is correct, then even when the claims are read as the majority suggests, in order to arrive at the intended interpretation, a limitation, i. e., that the shell must *expand* into frictional engagement, must still be added which has no express basis in the claim—exactly what was admonished against as recently as this court's decision in In re Prater, 56 CCPA 1381, 415 F.2d 1393 (1969). A look at the language of that decision will explain why this is wrong:

> There are quite sound reasons why, in an infringement suit on an issued patent, courts may sometimes "interpret patent claims in the light of the specification" so as to protect only that phase of the claimed invention that constitutes patentable subject matter and thus do justice and equity between

the parties.[30] However, this court has consistently taken the tack that claims yet unpatented are to be given the broadest reasonable interpretation consistent with the specification *during the examination of a patent application* since the applicant may then *amend* his claims, the thought being to reduce the possibility that, after the patent is granted, the claims may be interpreted as giving broader coverage than is justified.[31] [Emphasis as quoted].

The *Prater* court pointed out in the indicated footnotes that the reason for the different rules is that in an infringement suit, there is no opportunity to amend the claims and a court will have only two alternatives, i. e., to either read a limitation into the claims or hold them invalid, whereas during ex parte proceedings the applicant is not foreclosed from obtaining the proper coverage by amending his claim language.

It should also be pointed out that the appellants have not even argued for the interpretation which the majority now gives, but rather argued vigorously that the claimed articles be read entirely independently of any intended end use. I particularly disapprove of any court coming up with its own interpretation of claim language without giving either party before it the chance to argue the propriety of such interpretation.

I would therefore affirm the rejection under 35 U.S.C. § 102, since I believe that the limitation intended to be read into the claims should not be read as such.

The position I have now taken requires me, however, to consider the rejection under section 103 as having been made in the alternative, rather than as supplementary to the rejection under section 102. In making the "102" rejection, the Patent Office obviously considered that the claim limitations "thin" and "sheet metal" were too indefinite to accord any significant meaning thereto and that the language "for frictional centering engagement * * *" had no structural significance. Their reasons for doing so were logical and rational and I respect their judgment. However, it appears that the Patent Office, in making the "103" rejection, was giving the claims a different interpretation, conceding implicitly that the *type* of thin sheet metal disclosed by Ferris and contemplated by appellants is adequately defined by the claims. I do not find, in the combination of references cited, the suggestion that if the outer surface of the Ferris device were made cylindrical, and used in a cylindrical bore, it would expand into frictional engagement within the bore. Accordingly, I would reverse the rejection under 35 U.S.C. § 103.

I might add at this point that many of the problems involved in this and similar cases would be obviated if the Patent Office, either examiner or board, when making a rejection premised on either the breadth or indefiniteness of certain claim language, would include with the rejection and explanation of *why* the claims are considered as reading on the cited prior art and/or a *suggestion* of language which would adequately define distinguishing limitations.