58 CCPA

**Application of Wilbur E. SHEARMAN.**

**Patent Appeal No. 8373.**

United States Court of Customs and Patent Appeals.

Jan. 7, 1971.

J. H. Slough, Cleveland, Ohio, attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

Shearman appeals from the decision of the Patent Office Board of Appeals which affirmed the rejection of claims 1–3, 6, 7, 12 and 13 of his application [1] as unpatentable over the prior art.

## THE INVENTION

Appellant's invention is a ceramic sheath for enclosing the sensing tip of a thermocouple for use in measuring the temperature of molten metal in a melting furnace.

Figure 1 of the drawing is illustrative:

This figure shows an outer sheath 21 of ceramic refractory composition which includes an outboard end portion 25 of cylindrical configuration and an inboard end portion 21 of generally conical shape. The end portion 25 extends through an opening in a refractory wall 12 of a furnace adapted to hold molten ferrous metal and the conical portion 21 projects from the inner surface or "hot face" of

---

1. Serial No. 444,668, entitled "Thermocouples", filed April 1, 1965, in which one claim stands allowed.

the wall into the furnace chamber. A temperature sensing means comprising a thermocouple 16 composed of dissimilar metals providing a hot junction at 17, encased in a ceramic tube 20, is disposed within a central bore in the protective sheath. The sheath is described as preferably of conical form and of gradually increasing cross-sectional depth from a rounded tip end 23 to its intersection with the hot face of the furnace wall at 24. This construction is said to allow continuous monitoring of high temperatures in melting furnaces for much longer periods than are possible with thermocouples in protective tubes of "heavy uniform wall thickness."

In a modification, the sheath is mounted in a ceramic cover which fits over an opening in the furnace wall. The conical inboard portion of the sheath, rather than being located in the furnace chamber proper, is disposed in a tunnel formed by the opening, which tunnel communicates directly with the chamber of the furnace.

Claims 1 and 12 are illustrative:

1. A ceramic refractory protective sheath for temperature sensing means adapted to be inserted in a ferrous metal melt in a container, said sheath having a first portion disposed within a wall of said container and a second portion projecting beyond the "hot face" of said wall into the melt, said second portion having a substantially lesser wall thickness at its tip than at its intersection with said "hot face".

12. A cover for a ferrous melt container having a tunnel in the wall thereof, a ceramic refractory protective sheath encasing a temperature sensing device having a portion adapted to be inserted within said melt said portion being disposed entirely within and surrounded by said tunnel, said sheath encased temperature sensing device being mounted on said cover and closing said tunnel.

Claims 2, 3, 6 and 7 differ from claim 1 in reciting at least one of certain other features, such as that the sheath is "formed of one piece", that the inner portion of the sheath is "of generally conical exterior form", or that the sheath is of "gradually increasing diameter from the tip to the portions thereof intersecting" the furnace wall. Claim 13 is dependent on claim 12, adding the limitation that the portion of the sheath inserted within the melt is of substantially lesser wall thickness at its tip than at its intersection with the cover.

## THE REJECTION

Claims 1–3, 6 and 7 were rejected as unpatentable over Krieg [2] in view of Levy [3] under 35 U.S.C. § 103. Claim 12 was rejected as anticipated by Levy under 35 U.S.C. § 102 and claim 13 was rejected on Levy in view of Krieg under 35 U.S.C. § 103.

The Krieg patent relates to a thermocouple well for installation in the tubes of heaters in which petroleum oils are raised to high temperatures for cracking and distillation. Figure 1 of the patent is reproduced below:

*Fig. 1,*

2. U. S. Patent 2,135,720, issued November 8, 1938.

3. U. S. Patent 2,382,888, issued August 14, 1945.

As can be seen in the drawing, forging 3 contains a passage which permits oil flow between tubes 4 and 5. Thermocouple well 8, having an internal passage 9 to receive the thermocouple wires, has an outboard end mounted in an opening in the forging and an inboard end 10 extending into the passage. The inboard end is of a tapering or generally conical shape. This shape is said to avoid "pitting, corrosion and erosion affected, by the surrounding hot oil," that occurred in prior art thermocouple wells, which Krieg states were usually made of "a hemispherical or hemispheroidical form."

The patent to Levy discloses a thermocouple device installed in a metal-heating furnace as shown in Figure 1:

This thermocouple comprises a temperature-sensitive element encased in a ceramic tube 21. The tube extends through an opening in the furnace wall, which wall consists of a back plate 4, a heat insulating member 5 and a wall member 18. The opening in the insulating member is designated 26 and a larger opening in the member 18 is designated 27. Suitable hardware, including a nipple 32 threaded in the opening in the wall 4, seals the latter opening about the thermocouple.

With respect to claims 1–3, 6 and 7, the examiner considered that the recitations as to shape and relative thickness were met by Krieg's thermocouple well or sheath. Acknowledging that Krieg does not specify the material of his well or sheath, the examiner regarded Levy as making it obvious to use a refractory ceramic material and to employ the resultant thermocouple end well structure in a refractory furnace.

In holding claim 12 to be anticipated by Levy, the examiner stated:

> This patent discloses a ferrous melt container (13) having a tunnel (26 and 27) in a wall and a cover (pipe nipple 32). The ceramic sheath (21) has a *portion adapted to be inserted* within the heated area of the furnace, that portion being the section of sheath extending through and entirely surrounded by the tunnel 27. This claim does not require that the entire probe be surrounded by the tunnel \* \* \* but merely a *portion* thereof, which Levy clearly shows. [Emphasis in original.]

The examiner held the additional limitation regarding the shape of the sheath in claim 13 to be made obvious by Krieg.

In affirming, the board specifically adopted the examiner's position.

## OPINION

■ Appellant first contends that Krieg relates to a nonanalogous art because the thermocouple well installation there disclosed is for tubes of oil heaters rather than furnaces for melting metal. In answering this contention, the examiner pointed to Krieg's disclosure of the prevention of pitting, corrosion and erosion of the thermowell and referred to appellant's brief before the board as pointing out that these are the same difficulties appellant is dealing with. The examiner then stated:

> It is clear, therefore, that both Krieg and the appellant are dealing with the construction of thermocouples to be used in high temperature baths and since the problems involved are the same for both oil and molten metals, Krieg is an applicable reference.

The reasoning of the examiner, which is not controverted by appellant, satisfies us that it would be obvious to utilize Krieg's teaching of a thermocouple sheath in the wall of a furnace such as that of Levy to improve performance.[4]

4. Appellant does argue that the rejection for obviousness in this case is refuted by an affidavit of one John F. Wallace, submitted after appellant had appealed to the board and refused consideration by the examiner for lack of an explanation

The selection of a ceramic refractory material such as encloses the thermocouple of Levy as the material for the well would be obvious in view of the high temperatures involved.

We also agree that Krieg discloses the structural features of these claims. Thus, e. g., the "generally conical exterior form" [5] of the sheath is plainly disclosed in Krieg by the description of the well as having "a taper of gradually accelerating degree, terminating in a point." Also, Krieg's drawing shows the tapered portion of the sheath projecting into the heated liquid material from "beyond the 'hot face' of [the] wall." Moreover, Figure 1 of Krieg, *supra,* shows what is described as an "internal passage 9 to receive the thermocouple wires" to be in the shape of a cylindrical bore. This cylindrical shape results in the Krieg well meeting the claim requirement that the sheath have a substantially lesser wall thickness at its tip than at its intersection with the inner wall or "hot face".

As to claim 12, we are satisfied that Levy is an anticipation substantially for the reasons of the examiner as quoted above. In particular, we find no error in the position that the portion of Levy's thermocouple that is located within the confines of the opening or tunnel 27 shown in the furnace wall of that patent is "a portion adapted to be inserted within" the melt, since the melt would be expected to extend into the tunnel in any case where it is not closed.[6] That portion of the Levy thermocouple is also "disposed entirely within and surrounded by" the tunnel. The hardware at the outer end of the Levy thermocouple, including the nipple 32, answers the broad requirement of a cover. Claim 12 cannot be interpreted as requiring that the tunnel be in the cover (instead of in the wall) since appellant himself does not disclose a construction which would meet such an interpretation.

It should be readily apparent that, by reading claim 12 on the Levy device, by itself, the examiner (quite properly) was indicating to appellant that the language he had chosen to define the subject matter which he regarded as his invention was so broad that it could reasonably be read to include subject matter disclosed in the prior art. As we pointed out recently, in In re Borkowski, 422 F.2d 904, 57 CCPA 946 (1970), this is but one of a number of ways in which the breadth of claim language is criticized.[7]

---

why it was not earlier presented (relying on Patent Office Rule 195 and Section 1207, M.P.E.P.). The board held this refusal of the examiner to be a matter reviewable by the Commissioner on petition and not by the board and therefore did not consider the affidavit. We find no reversible error in that position and will not consider the affidavit either. It is noted, however, that the affidavit would carry little weight in any event since it is essentially no more than the statement of a conclusion that the invention is unobvious with no supporting reasons which rebut the examiner's reasons for holding to the contrary.

5. This is the language of claim 3. Other claims use different language to define essentially the same concept.

6. Levy does state that "[i]n most instances, opening 27 around the tube 21 is closed and sealed with a refractory insulation" but there is nothing to show that appellant has ever contested that

this statement of a feature not shown in the drawings prevents Levy from being a disclosure of an alternative construction where the opening 27 is *not* closed but is open to the ingress of the melt. Further evidence that appellant recognized the presence of such a disclosure appears in the argument in his brief that "[t]he ceramic tube [21] is spaced therefrom [the back wall of the furnace and/or the back wall 18 of the muffle, which has the opening 27 therein] throughout the length thereof."

7. It was also observed recently that when rejections such as this, which arise mainly from the imprecise nature of the claim language, are made, it would be commendable if the specific nature of the objection were also expressly pointed out. See In re Benson, 418 F.2d 1251, 57 CCPA 797 (1969) (Dissenting opinion). Here, of course, the examiner appears to have made his objections perfectly clear by his explanation of how he interpreted the claim language.

Claim 13, however, presents a different issue. While claim 12 is met *literally* by a sheath which has *only* an intermediate portion disposed entirely within the tunnel and the inner end extends past the confines of the tunnel, claim 13 refers to that portion as including a tip. The latter claim thus inherently requires that the tip of the sheath be within the tunnel rather than extend past it. Since that condition would not arise from merely covering the Levy thermocouple with the Krieg sheath, which the examiner suggests, the rejection of claim 13 must be reversed.

The decision is affirmed as to claims 1–3, 6, 7, and 12 and reversed as to claim 13.

Modified.

RICH, Judge (dissenting in part).

I agree with Judge Lane that claim 12 is not anticipated by Levy.

The majority opinion sets forth claim 12 and says, "As to claim 12, we are satisfied that Levy is an anticipation for the reasons of the examiner as quoted above." Reference is made to the quotation from the examiner. I will explain why I disagree with the examiner.

"Anticipation," of course, requires that each and every limitation of a claim is met by the disclosure of the reference (Levy). The majority opinion contains the Levy drawing. Where no special meaning has been given to terms of a claim by an applicant, the words are to be given their common meaning in the context of the specification.

Judge Lane has found that the term "cover" in claim 12 finds no counterpart in Levy, and I agree. Certainly a pipe nipple (32), open at both ends, is not a "cover" in any sense of the word but that was the examiner's contention, agreed to by the majority. But I go further.

Judge Lane has reproduced appellant's Fig. 2, to which his claim 12 is directed. In Fig. 2, the furnace (melt container) wall is 12, the "tunnel in the wall thereof" is 15, the "cover" is everything to the right of the x-y line except the ther-

mocouple and its sheath. It is held in place by bolts 30. Claim 12 requires that the thermocouple—the "temperature sensing device"—have

\* \* \* a portion adapted to be inserted within said melt *said* portion being disposed *entirely* within *and surrounded by* said tunnel \* \* \*. [My emphasis.]

What this means is clear from Fig. 2. Thermocouple 16, 18 (which looks just like Levy's) is located in bore 22 in sheath 21, the conical front end of which is "disposed entirely within and surrounded by" tunnel 15. That is the "portion" of the thermocouple which is "inserted within said melt." A thermocouple of this type in a tube measures temperature at its front end, as appellant makes clear, because that is where the "hot junction" is. See 17 in Fig. 1, majority opinion.

It is as plain as it can possibly be from Levy's Fig. 1 that the "portion" of his thermocouple 20 that is "inserted within said melt" is—as is the case with appellant—its front end portion extending outwardly from the back wall 18 of the muffle (furnace), particularly the "free end 22 of the tube 21." Claim 12 cannot be read on, and hence is not anticipated by, Levy because that portion, which *is* "inserted within said melt" is *not* "disposed *entirely* within and surrounded by said tunnel" (my emphasis) as claim 12 requires. It isn't in a tunnel *at all*.

The examiner construes aligned openings 26, 27 in the furnace walls 13, 18 to be the "tunnel" of claim 12. The whole tenor of the application shows that a tunnel is a place into which molten metal can flow. No metal will get into the hole 26 and the examiner appears to concede as much. That leaves only hole 27 to be construed as "tunnel." Levy teaches that "the opening 27 around the tube 21 is closed and sealed with a refractory insulation which hardens under the high operating temperatures of the furnace and holds the tube securely in the furnace wall." Thus, Levy preferably has *no* tunnel, which is another reason claim 12 is not anticipated.

But even assuming omission of the sealant in hole 27, and regarding it as a "tunnel," only by regarding the very short *segment* of Levy's tube 21 which lies between the two faces of wall 18 as the "portion adapted to be inserted within said melt" can the examiner sustain his position. But this is to distort the meaning of the claim since the portion intended to extend into the melt is the whole thermocouple to the left of wall 18, in particular, the *front* end where temperature measurement actually takes place. A segment on the center portion of the protecting tube would not measure temperature.

By no proper construction of claim 12 can it be made to read on Levy, it is therefore not anticipated, and its rejection under 35 U.S.C. § 102 should be reversed.

LANE, Judge (dissenting in part).

I dissent from the majority's holding that claim 12 is anticipated by Levy. Such holding is, in my opinion, not in accord with recognized use of the English language. The claim calls for a "cover" for the melt container. Illustrative of such a cover is the element 14 in appellant's Fig. 2.

Fig. 2

[A3409]

Admittedly, this is not the only possible structure meeting the term "cover" in claim 12. Since no special meaning

in the art is asserted, I give the word the broadest meaning attributed to it in ordinary usage. In Webster's Third New International Dictionary (1969), I find the following relevant definition for "cover" as a noun: "something that is placed over or about another thing." In The Random House Dictionary of the English Language (1969), I find the following: "*cover* * * * n. * * * something that covers;" and the verb form is defined as follows: "cover * * to place something over or upon." None of these definitions covers Levy's nipple 32, which is placed not over, not upon, but *in* the container wall. The Patent Office position, affirmed by the majority, that "cover" reads on Levy's element 32, is believed to be incorrect. I know of no lexicographic authority for that position.

The majority opinion appears to have transformed an anticipation rejection into an obviousness rejection and affirmed it.

Claim 13 depends from claim 12, and the foregoing analysis applies equally to claim 13. I therefore join the majority opinion as to claims 1–3, 6–8, concur in the result as to claim 13, and dissent as to claim 12.