NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MYTEE PRODUCTS, INC.,**
*Plaintiff-Appellant,*

**v.**

**HARRIS RESEARCH, INC.,**
*Defendant-Cross Appellant,*

**and**

**DOES 1 THROUGH 20,**
*Defendants.*

---

2010-1207,-1226

---

Appeal from the United States District Court for the Southern District of California in case No. 06-CV-1854, Magistrate Judge Cathy Ann Bencivengo.

---

**MYTEE PRODUCTS, INC.,**
*Plaintiff-Appellant,*

**v.**

**HARRIS RESEARCH, INC.,**
*Defendant-Appellee,*

**and**

**DOES 1 THROUGH 20,**
*Defendants.*

_____

2010-1457

_____

Appeal from the United States District Court for the Southern District of California in case No. 06-CV-1854, Magistrate Judge Cathy Ann Bencivengo

_____

Decided: September 2. 2011

_____

FREDERICK K. TAYLOR, Procopio, Cory, Hargreaves & Savitch LLP, of San Diego, California, argued for the plaintiff-appellant. With him on the brief was ANTHONY J. DAIN.

PRESTON P. FRISCHKNECHT, Peck Hadfield Baxter & Moore, LLC, of Logan, Utah, argued for defendant-cross appellant. With him on the brief were SHAUN L. PECK, KEELY SCHNEITER and SHAWN P. BAILEY.

_____

Before BRYSON, MAYER, and GAJARSA,[1] *Circuit Judges.*

BRYSON, *Circuit Judge.*

Mytee Products, Inc., filed a declaratory judgment action in the United States District Court for the Southern District of California seeking declarations of patent

_____

[1] Judge Gajarsa assumed senior status on July 31, 2011.

invalidity and noninfringement. The action targeted U.S. Patent Nos. 6,298,577 ("the '577 patent") and 6,266,892 ("the '892 patent"), both of which are assigned to Harris Research, Inc. After summary judgment proceedings and a jury trial, both patents were found to be not invalid and infringed. Harris moved for a permanent injunction, which the district court granted. Mytee appealed, and we affirm.

I

Mytee sought a declaratory judgment that certain claims from the '577 and '892 patents were invalid and not infringed by its vacuum-head attachments known as "Banana Glides." Each of the specified claims recites a vacuum-head attachment with "apertures." Mytee proposed that the term "apertures" be construed to mean "any holes, slots or openings that serve as liquid extraction nozzles," and the district court adopted that construction.

Each party filed summary judgment motions on invalidity. Mytee argued that the claims were anticipated by four prior art references known as Rowan, Campbell, Wood, and Bjorkman. Harris moved for summary judgment of non-anticipation on each of those references. The district court determined that the Rowan and Campbell references failed to disclose liquid extraction nozzles, and the court therefore granted Harris's motion with respect to those references. With respect to the Wood and Bjorkman references, the district court denied both parties' summary judgment motions on anticipation.

Harris also moved for summary judgment on obviousness. Harris argued that summary judgment was warranted because Mytee's validity expert, James Sakaguchi,

had addressed only anticipation and because Mytee had pointed to no other evidence on obviousness. Mytee responded that it did not need to offer expert testimony on obviousness, because "the art presented in this case was readily understandable." Instead, Mytee submitted a claim chart for some of the claims from the '577 patent that identified certain claim limitations in each of the four pieces of prior art. Without elaboration, Mytee asserted that "it would have been obvious" to combine the elements found in different references and that "one of ordinary skill in the art would have been motivated" to combine the teachings of different references.

The district court granted summary judgment of nonobviousness. The court explained that "[t]he 'evidence' of obviousness offered by Mytee, in support of a defense that requires undisputed clear and convincing evidence, is little more than conclusory assertions, gross generalities, and unsupported assumptions made by counsel."

The case proceeded to trial on infringement and anticipation as to the Wood and Bjorkman references. Each side designated experts to testify at trial. Harris chose two experts—Edward Durrant, who had experience in carpet cleaning, and Jonathan Richards, who lacked experience in carpet cleaning. Mytee chose two experts of its own—Frederick Thompson, who had experience in carpet cleaning, and Mr. Sakaguchi, who did not. Mytee filed a motion in limine to exclude Mr. Richards and Mytee's own expert, Mr. Sakaguchi, from testifying on the grounds that they were not persons of ordinary skill in the art of carpet cleaning. The district court reviewed the experts' qualifications and concluded that both Mr. Richards and Mr. Sakaguchi "have educational training regarding various aspects of mechanical engineering and

knowledge gained from experience prosecuting patents for mechanical devices that provide relevant technical expertise in the pertinent art, as well, making their opinion testimony admissible." Accordingly, the court denied Mytee's motion and allowed Mr. Richards to testify at trial on questions of infringement and validity.

The jury found that Mytee infringed each of the claims at issue and that none of the claims were anticipated by Wood or Bjorkman. The jury awarded Harris $36,165 in damages based on a reasonable royalty calculation. On appeal from that judgment, Mytee challenges the summary judgment of no anticipation with respect to Rowan and Campbell as well as the summary judgment of nonobviousness.[2] Mytee also seeks review of the district court's denial of its motion in limine to exclude Mr. Richards as an expert witness.

After the jury reached its verdict on infringement and validity, Harris moved for a permanent injunction. It argued that sales of Mytee's infringing Banana Glides would cause it irreparable harm based on indirect competition in the market for carpet-cleaning service between Mytee's customers and Harris's franchisees. The district court found that Mytee's continued sales of the infringing devices would cause irreparable harm to Harris and entered a permanent injunction. Mytee appealed from the order issuing the injunction.

## II

Mytee's primary argument on appeal is that the district court erred by granting Harris's motion for summary

---

[2] Mytee briefed the issues of infringement and anticipation based on Wood and Bjorkman, but it withdrew those issues at oral argument.

judgment that the selected claims were not anticipated by
Rowan and Campbell. The district court entered sum-
mary judgment based on its conclusion that neither
Rowan nor Campbell disclosed "apertures," which the
court construed to mean "any holes, slots or openings that
serve as liquid extraction nozzles." Mytee does not chal-
lenge that construction.

Mytee argues that Rowan discloses apertures that
serve as liquid extraction nozzles. Rowan discloses a
vacuum-head with apertures. The district court con-
cluded that the apertures in Rowan did not serve as liquid
extraction nozzles because they did not satisfy the court's
definition of a "liquid extraction nozzle" as "a tube or duct
through which fluid is pulled out." The court explained
that the Rowan patent discloses that fluid is pulled out
through a central channel rather than through the dis-
closed apertures.

We have reviewed the teachings of Rowan and find no
error in the district court's characterization of that refer-
ence. Although Rowan states that the apertures are
"exposed . . . to freshly dampened carpet," it does not
teach that fluid is pulled through the apertures.

Mytee next argues that the district court erred by
concluding that Campbell fails to disclose "apertures."
Campbell, however, does not disclose a vacuum-head
attachment that is used for fluid extraction. Instead, it
discloses a vacuum-head attachment that is used "for
cleaning . . . dandruff, or loose bits of hair from the scalp
and adjacent areas." Mytee argues that even though
Campbell's apertures were designed only to collect dan-
druff and hair, they are inherently capable of serving as
liquid extraction nozzles. Mytee contends the district

court therefore "incorrectly addressed the functional limitations" of the term "apertures."

That argument has two flaws. First, Mytee has failed to point to any evidence demonstrating that the Campbell device would be inherently capable of fluid extraction. Instead, Mytee relies on what it contends is a presumption of inherency recognized by this court in *In re Schreiber*, 128 F.3d 1473 (Fed. Cir. 1997), given that Campbell's structure is similar to the structure of the patented device. The *Schreiber* case, however, did not establish a presumption of inherency for issued patents. It held only that after establishing a prima facie case of anticipation, an examiner can shift the burden to the applicant "to show that the prior art structure did not inherently possess the functionally defined limitations of the claimed apparatus." *Id.* at 1478. Second, Mytee's argument, if accepted, would enable it to circumvent a limitation that Mytee itself proposed during claim construction. Although "the recitation of a new intended use for an old product does not make a claim to that old product patentable," *id.* at 1477, Mytee waived any inherency arguments when it proposed a functional definition for a structural limitation.

III

Mytee also appeals from the district court's grant of summary judgment of nonobviousness. Mytee argues that Harris, as the moving party, bore the initial burden of proving that there are no genuine issues of material fact. Because Harris did not submit any evidence on obviousness, Mytee contends that Harris did not meet its burden and that the district court incorrectly required Mytee to submit evidence demonstrating a genuine issue of material fact.

Mytee has misstated the standard that applies to the party moving for summary judgment when the non-moving party bears the ultimate burden of proof at trial. As the moving party, Harris bore "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Harris met that burden by informing the court that Mytee had offered no evidence or reasoned argument explaining why it would have been obvious to combine the teachings of at least two of the Wood, Bjorkman, Rowan, and Campbell references. At that point, the burden shifted to Mytee, as the party with the ultimate burden of proof on obviousness, to demonstrate why it would have been obvious to combine the references. That does not mean that Mytee was necessarily required to submit expert testimony. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004). But "[b]road conclusory statements" alone are insufficient. *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1372 (Fed. Cir. 2000). Upon review of Mytee's submissions, we agree with the district court's characterization that its obviousness arguments are nothing more than "conclusory assertions, gross generalities, and unsupported assumptions made by counsel." Mytee failed to provide any reason why a person of ordinary skill would have been motivated to combine the references.

IV

Mytee next argues that the district court erred by denying its motion in limine regarding Harris's expert witness, Mr. Richards. Mytee contends that Mr. Richards

was not a person of ordinary skill in the art of the invention in light of his lack of experience in carpet cleaning, and that the district court violated our precedent by allowing him to testify on the issues of infringement and validity. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).

Mr. Richards stated that a person of ordinary skill in the art would have a high school diploma and two years of experience in the carpet cleaning industry. Harris acknowledges that Mr. Richards did not qualify as a person of ordinary skill in the art under that definition because he had no experience in the carpet cleaning industry. However, Mr. Richards had additional qualifications, including a degree in electrical engineering and experience prosecuting patents for mechanical devices. The district court reviewed Mr. Richards' expertise and concluded that notwithstanding his lack of experience in carpet cleaning, his experience with mechanical devices would "provide relevant technical expertise in the pertinent art." Thus, it appears that the district court believed that Mr. Richards had experience relevant to the field of the invention even if he had not actually cleaned carpets or designed carpet-cleaning technology. *See SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010) (expert testimony admissible where testimony established an "adequate relationship" between witness's experience and the claimed invention), *aff'd*, 131 S. Ct. 2060 (May 31, 2011).

In any event, the district court did not define a person of ordinary skill in the art as needing to have carpet-cleaning experience, so the court had no occasion to decide whether Mr. Richards' lack of experience in that occupation disqualified him as an expert witness in this case. In fact, Mytee itself suggested that the level of skill in the

art did not require carpet-cleaning experience.  At the summary judgment stage, Mytee proposed that the level of skill in the art could be that of "an ordinary layman with average intelligence."  Moreover, Mytee proffered Mr. Sakaguchi's expert testimony even though he had no experience in the carpet cleaning field.  Under those circumstances, Mytee cannot persuasively claim that it was error to allow expert testimony from a person without such experience.  We therefore uphold the district court's decision to deny Mytee's motion to prohibit Mr. Richards and Mr. Sakaguchi from testifying.

V

District court decisions to grant or deny permanent injunctive relief are reviewed for abuse of discretion. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Mytee argues that the district court abused its discretion in entering an injunction, because the court's finding that Harris would be irreparably harmed was based on insufficient evidence.  According to Mytee, the evidence fell short of what was required because Harris did not submit a lost profits analysis and because Harris is not in direct competition with Mytee.  We have never held, however, that in order to establish irreparable harm a patentee must demonstrate that it is entitled to lost profits or that it is in direct competition with the infringer.  In this case, the district court rationally concluded that Harris had shown irreparable harm based on its finding that Mytee and Harris were indirectly competing through their customers.[3]  Harris operates a chain of

---

[3]    This conclusion is flawed, according to Mytee, because Harris's antitrust expert prepared a report stating that Harris and Mytee were not in competition.  That report is not inconsistent with the facts found by the district court; instead, it draws a different conclusion as

carpet-cleaning franchises and sells vacuum heads embodying its patented technology to its franchisees. Mytee sells its Banana Glides to independent carpet cleaners that compete directly with Harris's franchisees.

The court found that the indirect competition would cause irreparable harm to Harris because Harris's patented technology was almost exclusively used by its franchisees. Moreover, its franchisees used the technology as their primary tool for cleaning carpets. Mytee does not dispute either of those facts. Instead, it argues that there was no evidence in the record showing that Harris's franchisees would be harmed. But Harris submitted evidence demonstrating that its franchisees relied on the advantages of its patented technology to gain an edge in the marketplace. Based on that showing, it was not an abuse of discretion for the court to conclude that the market share enjoyed by Harris's franchisees would be threatened by the presence of a competitor using the same technology.

Mytee also argues that the district court erred by failing to consider Harris's delay in moving for an injunction. Mytee's claim of delay refers to Harris's decision not to seek a preliminary injunction. While we have held that delay in seeking an injunction is a factor to be considered in determining whether to issue a preliminary injunction, we have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) ("The period of delay exercised by a party prior

---

to a different legal issue, i.e., that indirect competition would be insufficient to serve as the basis for an antitrust claim.

to seeking a preliminary injunction . . . . is but one circumstance that the district court must consider in the context of the totality of the circumstances [in entering a preliminary injunction].").  Mytee has failed to persuade us that we should adopt such a rule.  There are significant differences in the requirements and uses of preliminary and permanent injunctions.  *See Lermer Ger. GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996) ("[Preliminary and permanent injunctions] are distinct forms of equitable relief that have different prerequisites and serve entirely different purposes.").  Moreover, adopting a rule such as that proposed by Mytee would likely result in a substantial increase in the number of requests for preliminary injunctions; in many cases, such requests would be filed not because of the need for preliminary injunctive relief, but merely to protect the patent owner's ultimate right to a permanent injunction.  Accordingly, we reject Mytee's "delay" argument and conclude that the district court did not abuse its discretion in entering a permanent injunction in this case.

**AFFIRMED**