NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: STEVEN C. CHUDIK,**
*Appellant*

---

2016-1487

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 11/701,902.

---

Decided: January 9, 2017

---

GREGORY B. BEGGS, Law Offices of Gregory B. Beggs, Downers Grove, IL, argued for appellant.

AMY J. NELSON, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee. Also represented by THOMAS W. KRAUSE, MONICA BARNES LATEEF.

---

Before PROST, *Chief Judge,* CLEVENGER, and REYNA, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

This case involves a patent claim to a cannulated scalpel that stands rejected by the U.S. Patent and Trademark Office ("PTO") Patent Trial and Appeal Board

("the Board") for anticipation. The claim in question contains a number of structural limitations and a functional limitation. There is no dispute that the structural limitations are met by a single prior art reference, U.S. Patent No. 5,843,108 ("Samuels"). When confronted with such facts, *i.e.*, the only question being whether the functional limitation can be found in the single prior art reference, we apply the long-standing and unquestioned precedent as stated in *In re Schreiber*, 128 F.3d 1473 (Fed. Cir. 1997). In a nutshell, *Schreiber* teaches that writing a claim that mixes structural and functional limitations comes at a price. *Id.* at 1478 ("[C]hoosing to define an element functionally, *i.e.*, by what it does, carries with it a risk."). The price is that when the structural limitations are met by a single prior art reference, and when the examiner "has reason to believe" that the prior art reference inherently teaches the functional limitation, the burden shifts to the patent applicant to show that the functional limitation cannot be met by the single prior art reference. *Id.* (citing *In re Swinehart*, 439 F.2d 210, 212 (C.C.P.A. 1971)).

In this case, the examiner and the Board shifted the burden to the applicant Steven C. Chudik ("Chudik") to disprove anticipation. The Board, finding that Chudik failed to rebut the examiner's rejection, concluded that the claim in suit was anticipated under 35 U.S.C. § 102. As explained below, in this case the examiner lacked adequate reason for his belief that Samuels inherently teaches the functional limitation, and the Board thus erred in sustaining the examiner's § 102 final office action. Accordingly, we reverse the Board's decision and remand the case for further proceedings.

## BACKGROUND

Chudik's patent application is directed to novel surgical methods and instruments for repairing a damaged anterior cruciate ligament ("ACL"), one of several liga-

ments in the knee. Traumatic injury—as experienced, for example, during athletic activities—may cause an ACL to tear, in which case ACL reconstructive surgery is necessary to restore stability to the knee and prevent further structural damage.

ACL reconstruction often requires the orthopedic surgeon to drill holes or "tunnel" through the bones that form the knee—*i.e.*, the femur and tibia—in order to access the damaged ACL and to anchor a graft on which the ACL can heal. Claim 15, the sole pending claim on appeal, is directed to a hollow, "cannulated" scalpel, which can be used to aid this "tunneling" procedure. Claim 15 reads:

> A cannulated scalpel comprising
>
> a blade having a blade end configured for creating a passageway through skin and soft-tissue to a target site on a bone,
>
> a flat handle adjacent the blade arranged in the same plane as the blade end, and
>
> a longitudinal cannulation in the handle and the blade forming a passageway adapted to accept a guide pin through the handle and blade.

The idea is that a small "guide wire" or "guide pin" can be inserted in a patient's leg to a precise point on the bone where the surgeon wants to create a tunnel. The guide pin sets a pathway from the skin of the leg to the desired tunnel site. Chudik's cannulated scalpel can then be "passed over" the guide pin "to create a passage through the skin and soft-tissue" to the bone. Joint Appendix at 34. With the skin and soft-tissue cleared away by the scalpel, the surgeon can bore a tunnel in the bone.

The following figure from Chudik's application illustrates the use of the claimed scalpel:



The figure shows a scenario where guide wire 30 is threaded in through an existing tibial tunnel 6, through the femur 2, and out through the patient's thigh 35. The cannulated scalpel 40 can then pass over the guide wire and form a passage to the femur.

The PTO examiner rejected claim 15 under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 5,843,108 ("Samuels"). Samuels discloses a hollow, "over the wire" scalpel for creating skin incisions (or "skin nicks") to allow for easier insertion of percutaneous devices, such as catheter tubes. Figure 1 from Samuels is shown below:



The Samuels scalpel possesses a central lumen 30, which extends through the length of the blade 10, the blocker 22, and the handle 20. Samuels teaches that the "blade is . . . advanced into the patient's skin until [the] blocker impedes further travel. As such, [the] blocker limits the depth of the skin nick formed." Samuels, col. 4 ll. 54–57 (citations to figure omitted).

The examiner concluded that Samuels teaches all the structural limitations of Claim 15, and Chudik did not challenge that conclusion below or in this court. The examiner also surmised that the Samuels blade is capable of creating a passageway to a target site on a bone, thus satisfying the functional limitation of claim 15, and rendering the claim anticipated by Samuels. The examiner first reasoned that Samuels taught the functional limitation because many repeated nicks of the skin with the Samuels blade should eventually result in the blade reaching a bone, and rejected claim 15 as anticipated for that reason.

On appeal to the Board, Chudik pointed out that the examiner's reasoning ignored the blocker in Samuels, which limits the depth of an incision, proving that repeated nicks would not cause an incision deeper than the first nick. The examiner, before the Board, retreated and shifted his rationale to another ground, namely his view that the Samuels blade is capable of reaching a shallow bone (shallow in comparison to the bone's location near a patient's skin), such as where "the bone can be easily access [sic] without a large or deep incision." Joint Appendix at 392.

The Board, without any analysis of its own and without acknowledging the examiner's original, mistaken rationale, agreed with the examiner's assessment that the blade in Samuels could reach a shallow bone, and thus satisfied the functional limitation of claim 15. Because Chudik did not rebut this rationale, the Board thus affirmed the examiner's § 102 rejection.

Chudik appeals the Board's decision. We have jurisdiction under 28 U.S.C. 1295(a)(4)(A).

## DISCUSSION

There is no challenge to analyzing this case under the *Schreiber* framework. Since the parties agree that Samuels teaches all the structural limitations of Claim 15, the only question on appeal is whether the functional limitation of claim 15 is found in Samuels. If so, the Board would have been correct in holding that Chudik failed to carry his burden under *Schreiber*, and we would affirm. If not, we must reverse and remand.

Chudik makes two arguments to show that Samuels does not teach the functional limitation of allowing the claimed blade to reach a bone. First, he focuses on the text of the Samuels disclosure and what it affirmatively teaches. Chudik maintains that, properly understood, the Samuels blade never actually penetrates *through* the skin

into soft tissue lying under the skin, and thus could not possibly reach a bone. Chudik points to language in the Samuels specification saying the "blade is . . . advanced into the patient's skin until [the] blocker impedes further travel," and the blocker "restricts travel of the blade into the patient's skin" and limits "the depth of blade travel into the patient's skin." The Board, however, interpreted Samuels differently, implicitly reading "into the patient's skin" to identify the location of, rather than the depth of, the incision made by the blade, and reading the Samuels blade as capable of penetrating skin to reach underlying soft tissue. "What a reference teaches is a question of fact." *In re Beattie*, 974 F.2d 1309, 1311 (Fed. Cir. 1992). The Board's interpretation—that Samuels did not expressly limit itself to superficial incisions on the skin's surface—is supported by substantial evidence, given that the nicks created by the Samuels scalpel must be sufficiently deep to allow a catheter to be inserted into subcutaneous tubular structures. Therefore, we reject Chudik's first argument.

Chudik's second argument is aimed directly at whether, in this case, the examiner had "reason to believe" that the Samuels blade could reach any of the shallow bones mentioned by the examiner, such as a patient's temple, kneecap, or elbow. *See Schreiber* at 1478. Under *Schreiber*, if it is established that an examiner has reason to believe that a functional limitation is taught in the single prior art reference, the burden shifts to the applicant to disprove the examiner's belief. An examiner's belief, however, must be tethered to or grounded in some rationale so as to establish a prima facie case of anticipation. *See id.* (explaining that the examiner's observation that the prior art device had the "same general shape" as the claimed device established a prima facie case of inherent anticipation); *see also Mytee Prods., Inc. v. Harris Research, Inc.*, 439 F. App'x 882, 886 (Fed. Cir. 2011) ("The *Schreiber* case . . . did not establish a presumption

of inherency for issued patents. It held only that *after establishing a prima facie case of anticipation*, an examiner can shift the burden to the applicant 'to show that the prior art structure did not inherently possess the functionally defined limitations of the claimed apparatus.' " (emphasis added)).

Here, the examiner believed—and the Board affirmed this belief—that the blade of the Samuels scalpel was inherently capable of reaching a shallow bone. The examiner, however, gave no justification for this belief, and nothing in Samuels offers an indication of the size of the blade or indicates that it would be able to contact subdermal anatomical features. If anything, Samuels explains that its design specifically prevents incisions that could damage structures near the skin. Samuels, col. 1 ll. 55–61 ("[T]he current design of the scalpels does not limit the depth or length of the skin nick. This can be of great concern when the tubular structure in question is close to the skin surface. In this circumstance, an inadvertently [sic] deep skin nick may sever the structure of concern with potentially disastrous consequences."). The examiner and the Board failed to explain how the Samuels blade could be employed in a manner to reach a shallow bone, but without the "disastrous consequences" that the blocker in Samuels is designed to prevent. For that reason, the examiner failed to make the necessary prima facie showing to shift the burden of going forward the applicant. *See In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990) ("[T]he PTO's asserted prima facie case . . . [is] not properly drawn . . . if the PTO did not correctly apply or understand the subject matter of the reference, or if the PTO drew unwarranted conclusions therefrom.").

Substantial evidence is lacking to show that Samuels teaches the functional limitation in claim 15. In this circumstance, we reverse the Board's rejection of claim 15 under § 102 and remand for further proceedings. *See In re Skvorecz*, 580 F.3d 1262, 1267–68, 1270 (Fed. Cir.

2009) (reversing § 102 rejection for insufficient reason to believe that a functional limitation was taught by a prior art reference, despite "structural similarity" between the invention and the prior art, and remanding for further proceedings).

CONCLUSION

For the reasons set forth above, we reverse the Board's decision and remand.

**REVERSED AND REMANDED**

COSTS

No Costs.